# EXHIBIT A

*Prepared by*

WHEN RECORDED RETURN TO:
CIMARRON MORTGAGE COMPANY
DBA/THE MORTGAGE WAREHOUSE
13921 ICOT BLVD., SUITE 700
CLEARWATER, FL 33760

716665

BOOK **5450** PAGE **593**

Loan Number: ▮▮▮▮▮▮

[Space Above This Line For Recording Data]

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on September 27, 2001. The grantor is AVERY CAHEE AND JANET CAHEE

("Borrower").

The trustee is JOHN H. SHOWS, ATTORNEY-AT-LAW

("Trustee").

The beneficiary is CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE

which is organized and existing under the laws of MISSISSIPPI , and whose address is P.O. BOX 12830, JACKSON, MS 39236

("Lender").

Borrower owes Lender the principal sum of Ninety Thousand Nine Hundred Fifty and NO/100ths

Dollars (U.S. $ 90,950.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1, 2031 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in Hinds County, Mississippi:

LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HINDS COUNTY AT JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 28, REFERENCE TO WHICH IS HEREBY MADE.

*Indexing Inst  Lot 22 Parkwood Subd.*

which has the address of 1044 PARKWOOD PLACE, Jackson, MS 39206
["Property Address"]

MISSISSIPPI—Single Family—Fannie Mae/Freddie Mac Uniform Instrument

LaserDoc (TM) by Delpi Information Sciences Corp. DE433-1.0597

Form 3025 9/90
Amended 5/91
Page 1 of 6

BOOK **5450** PAGE **594**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. §2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires,

*LaserDoc (TM) by Delphi Information Sciences Corp.   DE433-2.0597*

Form 3025 9/90
Page 2 of 6

BOOK**5450**PAGE**595**

The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Right in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

*LaserDoc (TM) by Delphi Information Sciences Corp.  DE433-3.0597*

Form 3025 9/90
Page 3 of 6

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights

Form 3025 9/90
Page 4 of 6

BOOK 5450 PAGE 597

in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in _____ Hinds _____ County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

23. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

LaserDoc (TM) by Delphi Information Sciences Corp. DE433-5.0597

BOOK **5450** PAGE **598**

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] VA Rider | [X] Other(s) [specify]   PREPAYMENT RIDER | |

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Avery Cahee_ (Seal)
AVERY CAHEE                                     -Borrower

_Janet Cahee_ (Seal)
JANET CAHEE                                     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

STATE OF MISSISSIPPI

County ss: Hinds

On this 27th day of September, 2001, the undersigned authority in and for said County and State, the within named                                     personally appeared before me,

Avery Cahee & Janet Cahee

that they signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and seal of office.

My Commission Expires:

(Seal)

_Luisa A. O'Malley_
Notary Public

Notary Public State of Mississippi At Large
My Commission Expires: September 28, 2001
Bonded Thru-Heldon, Brooks & Garland, Inc.

9-28-1

LaserDoc (TM) by Delphi Information Sciences Corp.  DB433-6.0597

Form 3025 9/90
Page 6 of 6

BOOK **5450** PAGE **599**

# ADJUSTABLE RATE RIDER  Loan Number: 1▮▮▮▮
### (LIBOR Index — Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this     27th day of          September, 2001    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1044 PARKWOOD PLACE, Jackson, MS 39206

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of     10.125    %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of      October, 2003     , and on that day every     6th     month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR INDEX—Single Family—Freddie Mac Uniform Instrument     Form 3192 7/92
LaserDoc (TM) by Delphi Information Sciences Corp. LDoc033-1.0398     Page 1 of 3

BOOK **5450** PAGE **600**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding eight and 250/1000ths percentage points ( 8.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.125 % or less than 10.125 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.125%.
My interest rate will never be less than 10.125%.
**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 3192 7/92
Page 2 of 3

BOOK **5450** PAGE **601**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)      _____ (Seal)
AVERY CAHEE                    -Borrower      JANET CAHEE                    -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                               -Borrower                                    -Borrower

LaserDoc (TM) by Delphi Information Sciences Corp.  Ldoc033-3.0398

Form 3192 7/92
Page 3 of 3

BOOK 5450 PAGE 602

# PREPAYMENT RIDER TO THE DEED OF TRUST

THIS RIDER is made this the 27TH Day of SEPTEMBER, 2001 and is incorporated into and intended to form a part of the Note and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated the same date as this Addendum, given by the undersigned ("Borrower") to **CIMARRON MORTGAGE COMPANY D/B/A/THE MORTGAGE WAREHOUSE** in the amount of $90,950.00. Property described in the Security Instrument and located at:

1044 PARKWOOD PLACE
JACKSON, MS 39206

The PREPAYMENT CONVENANTS are hereby modified to read as follows:

Borrower agrees that during the first TWO (2) years of this loan, Borrower may prepay the loan in an amount not exceeding twenty percent (20%) of the original principal amount in any twelve (12) month period without penalty. However, during the first TWO (2) years of this loan, a prepayment charge shall be imposed on any amount(s) prepaid in any twelve (12) month period in excess of twenty percent (20%) of the original principal amount of the loan. The prepayment charge shall be an amount equal to six (6) months interest at the Note rate on the amount(s) prepaid during that twelve- (12) month period. After the first TWO (2) years of this loan there shall be no prepayment penalty.

All other provisions of the Note and Security Instrument are unchanged by the RIDER and remain in full force and effect.

LOAN #: ▮▮▮▮▮

_Avery Cahee_ (Seal)
AVERY CAHEE

_Janet Cahee_ (Seal)
JANET CAHEE

_____ (Seal)

STATE OF MS
COUNTY OF HINDS
FILED - RECORDED

OCT 2 3 12 PM '01

BOOK 5450
PAGE 592
L. GLYNN PEPPER
CHANCERY CLERK

EXHIBIT B

Loan Number: ▉▉▉▉▉▉▉▉▉▉▉



## ADJUSTABLE RATE NOTE
(LIBOR Index — Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

September 27, 2001          JACKSON          Mississippi
[Date]                     [City]            [State]

1044 PARKWOOD PLACE, Jackson, MS 39206
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 90,950.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on November 1, 2001 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on October 1, 2031 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE P.O. BOX 12830, JACKSON, MS 39236 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 806.57 . This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the first day of October, 2003 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding eight and 250/1000ths percentage points ( 8.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 13.125 % or less than 10.125 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date

by more than on.e percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.125 %.
My interest rate will never be less than 10.125%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR INDEX—Single Family—Freddie Mac Uniform Instrument
LaserDoc (TM) by Delphi Information Sciences Corp. LDoc0333.0195

Form 3590 7/92
Page 2 of 3

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_Avery Cahee_ _____ (Seal)                              _____ (Seal)
AVERY CAHEE                    -Borrower                          -Borrower

_____ (Seal)                              _____ (Seal)
-Borrower                                            -Borrower

_____ (Seal)                              _____ (Seal)
-Borrower                                            -Borrower

_____ (Seal)                              _____ (Seal)
-Borrower                                            -Borrower

Pay to the order of                                    *[Sign Original Only]*

RESIDENTIAL FUNDING CORPORATION

Without recourse
CIMARRON MORTGAGE COMPANY DBA the Mortgage Warehouse

By _____
Robert Parker, Vice President

PAY TO THE ORDER OF
Bankers Trust Company as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _Judy Faber_
Judy Faber, Vice President

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR INDEX—Single Family—Freddie Mac Uniform Instrument          Form 3590 7/92
*LaserDoc (TM) by Delphi Information Sciences Corp. LDoc0322.0195*          Page 3 of 3

## ALLONGE TO PROMISSORY NOTE

### FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

**POOL:** ▮▮▮▮        **LOAN ID:** ▮▮▮▮▮▮▮▮▮▮▮

**NOTE DATE: 09/27/2001    LOAN AMOUNT: $90950.00**

**BORROWER NAME: AVERY CAHEE**

**PROPERTY ADDRESS: 1044 PARKWOOD PLACE, JACKSON, MS 39206**

---

### PAY TO THE ORDER OF

**RESIDENTIAL FUNDING COMPANY, LLC**

### WITHOUT RECOURSE

**Deutsche Bank Trust Company Americas as Trustee, f/k/a Bankers Trust Company as Trustee, Residential Funding Corporation as Attorney in Fact**

By: _____

**John Hagebock, Vice President**
**Residential Funding Corporation**

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL: ▮▮▮▮▮          LOAN ID: ▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮

NOTE DATE:     09/27/2001      LOAN AMOUNT:      $90,950.00

BORROWER NAME: AVERY CAHEE

PROPERTY ADDRESS:   1044 PARKWOOD PLACE, JACKSON, MS 39206

PAY TO THE ORDER OF

Residential Mortgage Trust 2008-R1

WITHOUT RECOURSE

Residential Funding Company, LLC fka Residential Funding Corporation

By: _____

Name: Michael Mead

Title: Limited Signing Officer

## **ALLONGE TO THE NOTE**

Loan Number: [redacted] C5101C
Borrower:        AVERY CAHEE
Date of Note:    9/27/2001
Loan Amount:    $90,950.00
Property Address: 1044 PARKWOOD PLACE, JACKSON, MS, 39206

For Value received, I hereby transfer, endorse and assign the within Note.

Pay to the order of:
**DLJ Mortgage Capital, Inc.,** Without recourse

**WELLS FARGO AS TRUSTEE OF RESIDENTIAL MORTGAGE TRUST 2008-R1 BY
SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT**

Signature: _____
Name:         Suzanne Johnstone
Title:           Document Control Officer

**Company:** WELLS FARGO AS TRUSTEE OF RESIDENTIAL MORTGAGE TRUST
2008-R1 BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT
**Address:** C/O SELECT PORTFOLIO SERVICING, INC., 3815 SOUTH WEST
TEMPLE, SALT LAKE CITY, UT, 84115
**Phone:** (888) 258-8602

# ALLONGE TO NOTE

| | |
|---|---|
| Service #: | ███████████████ |
| Control Number: | ██████████ |
| Allonge to Note Dated: | **9/27/01** |
| And Executed by: | **AVERY CAHEE** |
| County of: | **HINDS (1st DISTRICT)** |
| Property Address: | **1044 PARKWOOD PLACE, JACKSON, MS 39206-0000** |
| Loan Amount: | **$90,950.00** |
| Pay to the order of: | **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST** |
| Without recourse: | **DLJ MORTGAGE CAPITAL INC., BY CALIBER HOME LOANS INC. AS ATTORNEY IN FACT** |

By:      *Brandi Coulter*

**Brandi Coulter**

Title:      **Authorized Signatory**



Prepared By:  SUMAN BERA

CAALNG

## PREPAYMENT ADDENDUM TO THE NOTE

THIS ADDENDUM is made this the 27TH Day of SEPTEMBER, 2001 and is incorporated into and intended to form a part of the Note and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated the same date as this Addendum, given by the undersigned ("Borrower") to **CIMARRON MORTGAGE COMPANY D/B/A/THE MORTGAGE WAREHOUSE** in the amount of $90,950.00. Property described in the Security Instrument and located at:

1044 PARKWOOD PLACE
JACKSON, MS 39206

The PREPAYMENT CONVENANTS are hereby modified to read as follows:

Borrower agrees that during the first TWO (2) years of this loan, Borrower may prepay the loan in an amount not exceeding twenty percent (20%) of the original principal amount in any twelve (12) month period without penalty. However, during the first TWO (2) years of this loan, a prepayment charge shall be imposed on any amount(s) prepaid in any twelve (12) month period in excess of twenty percent (20%) of the original principal amount of the loan. The prepayment charge shall be an amount equal to six (6) months interest at the Note rate on the amount(s) prepaid during that twelve- (12) month period. After the first TWO (2) years of this loan there shall be no prepayment penalty.

All other provisions of the Note and Security Instrument are unchanged by the ADDENDUM and remain in full force and effect.

LOAN

_____ (Seal)
AVERY CAHEE

_____ (Seal)

_____ (Seal)

Note Allonge

Borrower: AVERY CAHEE AND JANET CAHEE
Property Address: 1044 PARWOOD PLACE, JACKSON, MISSISSIPPI 39206
Loan Amount: $90,950.00

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a permanent part
of said Note.

Pay to the order of:

DLJ MORTGAGE CAPITAL, INC., without recourse

**RESIDENTIAL MORTGAGE TRUST 2008-R1, BY AND THROUGH ITS ATTORNEY IN FACT,
SELENE FINANCE LP**

By:
Name:     Donna Brammer
Title:     Vice President

# ALLONGE TO NOTE

Service #:

Control Number:

**Allonge to Note Dated:** **9/27/01**

**And Executed by:** **AVERY CAHEE**

**Property Address:** **1044 PARKWOOD PLACE, JACKSON, MS 39206-0000**

**Loan Amount:** **$90,950.00**

**Pay to the order of:** **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST**

**Without recourse:** **DLJ MORTGAGE CAPITAL INC., BY CALIBER HOME LOANS INC. AS ATTORNEY IN FACT**

**By:**

_Mindi Coleman_
**Mindi Coleman**

**Title:** **Authorized Signor**

Prepared By: SATEESH K VASAMSETTI

CAALNG


Avery Cahee
VERI

**NOTE ALLONGE**

Loan Number: ▮▮▮▮▮▮

Borrower Name:  AVERY CAHEE

Original Note Amount:  $90,950.00

Original Note Date:  9/27/2001

Original Lender:  CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE

Property Address:     1044 PARKWOOD PLACE

                      JACKSON, MS 39206

PAY TO THE ORDER OF:

Without Recourse,

**USBT NA T/F USBTNA T/F LSF9 MSTPTR BY MISSION GLOBAL, LLC AS ATTORNEY IN FACT**

By: _April Kennedy_____

Printed Name: April Kennedy
Title: Vice President, Mission Global, LLC
Date: November 19, 2020

## BANKERS TRUST COMPANY OF CALIFORNIA, NATIONAL ASSOCIATION

### CERTIFICATE

I, Sandra L. West, Assistant Secretary of Bankers Trust Company of California, National Association, a National Trust Company organized and existing under the laws of the United States of America (the "Association") do hereby certify that attached hereto is a true, correct and complete copy of a Resolution and Amendment, filed with and acknowledged by the Office of the Comptroller of the Currency, pursuant to which the title of the Association will be changed to Deutsche Bank National Trust Company, effective on April 15, 2002.

*IN WITNESS WHEREOF*, I have hereunto set my hand and affixed the corporate seal of the Association this 10th day of April 2002.

_____
Assistant Secretary

State of New York      )
                       ) ss.:
County of New York     )

On the 10th day of April in the year 2002 before me, the undersigned, a Notary Public in and for said state, personally appeared Sandra L. West, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

SONJA K. OLSEN
Notary Public, State Of New York
No.01OL4974457
Qualified In New York County
Commission Expires November 13, 20___

## BANKERS TRUST COMPANY OF CALIFORNIA, NATIONAL ASSOCIATION

I, DAVID ABRAMSON, certify that:

1.    I am the duly elected and acting Secretary of Bankers Trust Company of California, National Association (formerly, BT Trust Company of California), and as such officer, I am the official custodian of its records; that the following is a true and correct copy of resolutions adopted by the Association's shareholders; and that such resolutions are now lawfully in force and effect:

RESOLVED, that the Association is hereby authorized to amend the First Article of Association to read as follows:

FIRST:    The title of this Association shall be "Deutsche Bank National Trust Company."

FURTHER RESOLVED, that the effective date of the amendment of the First Article of Association shall be April 15, 2002.

2.    The following is a true and correct copy of a resolution of the Association's Board of Directors, and such resolution is now lawfully in force and effect:

RESOLVED, that the amendment of the First Article of Association to change the title of the Association to "Deutsche Bank National Trust Company" is hereby approved, effective April 15, 2002.

3.    The foregoing amendment to the Articles of Association has been duly approved by the Board of Directors of Bankers Trust Company of California, National Association on March 21, 2002.

4.    The Resolution and Amendment set forth above has not been modified or rescinded and is in full force and effect.

IN WITNESS WHEREOF, I have set my hand and the seal of this Association this 27th day of March 2002.

David Abramson

David Abramson
Secretary

(S E A L)

State of New York   )
                  ) ss.:
County of New York )

On the 27th day of March in the year 2002 before me, the undersigned, a Notary Public in and for said state, personally appeared David Abramson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

SANDRA L. WEST
Notary Public, State Of New York
No.01WE4942401
Qualified In New York County
Commission Expires September 19, 20 _0_2_

**Office of the Comptroller of the Currency**

Accepted by: _____
James A. Bundy, Licensing Manager

Date: ____4/4/02____



Comptroller of the Currency
Administrator of National Banks

Attn: Licensing Unit
50 Fremont Street, Suite 3900
San Francisco, CA 94105
(415) 545-5930, FAX (415) 442-5315

April 4, 2002

Sandra L. West
Assistant Secretary
C/o Deutsche Bank
31 West 52nd Street-M/S NYC09-0810
New York, NY 10019

Re:      Title Change
         Bankers Trust Company of California, N.A.
         Los Angeles, California
         Charter No. 18608

Dear Ms. West:

The Office of the Comptroller of the Currency (OCC) has received your letter concerning the title change, appropriate amendment to the First Article of Association of Bankers Trust Company of California, National Association. The OCC will update their records to reflect that as of *April 15, 2002*, the title of Bankers Trust Company of California, National Association, Charter Number 18608 *will change to Deutsche Bank National Trust Company.*

The original of the bank's respective Article has been forwarded to the bank's official file with our Office and an original is hereby returned for your records.

As a result of the Garn-St Germain Depository Institutions Act of 1982, the OCC is no longer responsible for the approval of national bank name changes nor does it maintain official records on the use of alternate titles. The use of other titles or the retention of the rights to any previously used title is the responsibility of the bank's board of directors. Legal counsel should be consulted to determine whether or not the new title, or any previously used title, could be challenged by competing institutions under the provisions of federal or state law.

Very truly yours,

James A. Bundy
Licensing Manager

Enclosure

EXHIBIT C

752552



BOOK 5551 PAGE 89

GMAC-RFC
Diane Melstad
1 Meridian Crossings, Ste.100
Minneapolis, MN 55423



## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 6310 I-55 North, Suite W400, Jackson, MS 39211, does hereby grant, sell, assign, transfer and convey unto _____ , a corporation organized and existing under the laws of the United States (herein "Assignee"), is

all beneficial interest under a certain Deed of Trust, dated        September 27, 2001   , made and executed by    Avery Cahee and Janet Cahee                                        , to John H. Shows              Trustee, and given to secure payment of $90,950.00    which Deed of Trust is of record in Book, Volume, or Liber No 5450      , at page  593      (or as No. ) of the Chancery Clerk's Records of Hinds  (1st J.D.)   County, State of Mississippi, together with the note(s) and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on  October 5, 2001.

CIMARRON MORTGAGE COMPANY
DBA THE MORTGAGE WAREHOUSE
BY _____

Robert Parker· Vice President

STATE OF MISSISSIPPI
COUNTY OF HINDS

**BANKERS TRUST COMPANY AS TRUSTEE**
3 Park Plaza, Sixteenth Floor, Irvine, California 92714

PERSONALLY appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within-named   Robert Parker· Vice Pr who acknowledged to me that    he is of CIMARRON MORTGAGE COMPANY, a Mississippi corporation, and that   he signed and delivered the above and foregoing instrument acting for and on behalf of said corporation, after having been first duly authorized so to do.
*DBA The Mortgage Warehouse
GIVEN UNDER MY HAND AND OFFICIAL SEAL, this    05 day of October,  2001.

My Commission Expires:                    Notary Public ·  Mary S. Newman
August 12, 2002

This Instrument Prepared By: Amy Robertson, Cimarron Mortgage Company, address: P. O. Box 12830, Jackson, MS 39236-2830, tel. no: 601-899-1500

Multistate/4/MS

Return to:
Underwood Law Firm
340 Edgewood Terrace Drive
Jackson, Mississippi 39206
(601) 981-7773

BOOK 5 5 5 1 PAGE    90

Exhibit "A"

Lot 22, Parkwood Subdivision, a subdivision according to the map or plat thereof which is on file and of record in the Office of the Chancery Clerk of Hinds County at Jackson, Mississippi in Plat Book 12 at Page 28, reference to which is hereby made.

INDEXING INSTRUCTIONS:  Lot 22, Parkwood Subd.

STATE OF MS
COUNTY OF HINDS
FILED - RECORDED

2002 APR -5  PM 3: 05

BOOK 55 51
PAGE      89
L GLYNN PEPPER
CHANCERY CLERK

This Instrument Was Prepared By:
Peggy Jordan
US Recordings
2925 Country Drive
St. Paul, Minnesota USA 55117
Phone #: 1-877-272-5250 x408

**BOOK 7148 PAGE 5710**

**1395340**

When Recorded Return To:

Record
1st

## Assignment of Deed of Trust

Dated: September 13, 2006

FOR VALUE RECEIVED, Deutsche Bank Trust Company Americas as Trustee, f/k/a Bankers Trust Company as Trustee, Residential Funding Corporation as Attorney in Fact

    8400 Normandale Lake Blvd, Suite 600, Minneapolis, Minnesota 55437-1085

the undersigned hereby grants, assigns and transfers to

Residential Funding Company, LLC
8400 Normandale Lake Blvd Suite 600
Minneapolis, MN 55437-1079
(herein "Assignee"),

all beneficial interest under a certain Deed of Trust dated **September 27, 2001**
executed by **AVERY CAHEE**

TO/FOR:

and recorded in Book **5450** on Page(s) **593** As Document Number _____ on **10/923/2012**
_____ in the office of the Chancery Clerk of **Hinds County, 1st District , Mississippi**

MORTGAGE AMOUNT: $90950.00
PROPERTY ADDRESS: 1044 PARKWOOD PLACE, JACKSON, MS 39206
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Deed of Trust.

Deutsche Bank Trust Company Americas as Trustee, f/k/a Bankers Trust Company as Trustee, Residential Funding Corporation as Attorney in Fact

By: _____

Shannon Keogler,
Assistant Vice President

STATE OF  Minnesota    )
                       ) SS
COUNTY  Ramsey    )

On 13th day of **September, 2006** before me, the undersigned, a Notary Public in and for said State personally appeared Shannon Keogler, Assistant Vice President of Deutsche Bank Trust Company Americas as Trustee, f/k/a Bankers Trust Company as Trustee, Residential Funding Corporation as Attorney in Fact, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Sandra Jean Kinnunen, Notary Public

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2011



BOOK 7148 PAGE 5711

JUDITH A. GIBSON
REGISTER OF DEEDS , MECKLENBURG COUNTY
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE NC 28202

| | | |
|---|---|---|
| Filed For Registration: | 02/10/2003 11:21 AM | |
| Book: | RE 14809 Page: 383-386 | |
| | P/A 4 PGS $20.00 | |
| Recorder: | TERESITA BYRUM | |

State of North Carolina, County of Mecklenburg

The foregoing certificate of BRENT WAYNE HOYLER Notary is certified to be correct. This 10TH of February 2003

JUDITH A. GIBSON, REGISTER OF DEEDS By: *Teresita Byrum*
Deputy/Assistant Register of Deeds



BOOK 7148 PAGE 5712

**JUDITH A. GIBSON, REGISTER OF DEEDS**
**720 E. FOURTH STREET, ROOM 103**
**CHARLOTTE, NORTH CAROLINA 28202**
**704 - 336 2443**

State of North Carolina
County of Mecklenburg

I do hereby certify this to be a true copy of the attached document
filed and recorded in the aforesaid county as evidenced in Instrument/
Book No 14809 Page no 383 ends with Page 386

Witness my hand and seal this 17th day of October 2007

Judith A. Gibson

Grace Tucker
Register of Deeds, Deputy Register of Deeds

AFTER RECORDING, PLEASE RETURN TO

Rushmore Loan Management Services
15480 Laguna Canyon Road, Suite 100
Irvine CA 92618

BOOK 7148 PAGE 5716

*Lot 22, Parkwood*

1395341

Record
2nd

WHEN RECORDED RETURN TO:
RESIDENTIAL FUNDING COMPANY, LLC
One Meridian Crossings
Minneapolis, MN 55423

## CORPORATION ASSIGNMENT of DEED OF TRUST

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

**Residential Mortgage Trust 2008-R1**

all beneficial interest under that certain Deed of Trust dated 9/27/2001
executed by AVERY CAHEE

TO/FOR:

TRUSTEE:

and recorded in Book 5450 on Page 593 as Instrument No. _____ on 10/23/2012
of official Records in the County Recorder's Office of Hinds , County, Mississippi.

MORTGAGE AMOUNT:  $90,950.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____
NAME: Jeanne J. Smith
TITLE: Assistant Vice President

STATE OF                    Minnesota )
COUNTY OF                   Hennepin )

Personally appeared before me, the undersigned authority in and for the said county and state, on this day
3/10/2008, within my jurisdiction, the within named  Jeanne J. Smith  who acknowledged that he/she is
Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation' a
corporation, and that for and on behalf of the said corporation, and as its act and deed he/she executed the
above and foregoing instrument, after first having been duly authorized by said corporation so to do.

_____
Notary Public in and for said State

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

STATE OF MS
COUNTY OF HINDS
FILED-RECORDED
1ST DISTRICT

2013 JUN 11  PM 3:03

BOOK 7148
PAGE 5716
EDDIE JEAN CARR
CHANCERY CLERK



**1st Record**

BOOK 7197 PAGE 9492

## ASSIGNMENT OF DEED OF TRUST

| PREPARED BY: | WHEN RECORDED RETURN TO: |
|---|---|
| Selene Finance LP | Dean Morris, LLC |
| 9990 Richmond Ave., Suite 400 South | 2309 Oliver Rd |
| Houston, TX 77042 | Monroe, LA 71201 |
| (877) 735-3637 | (318) 330-9020 |
| **GRANTOR:** | **GRANTEE:** |
| Residential Mortgage Trust 2008-R1 | DLJ Mortgage Capital, Inc. |
| c/o Selene Finance LP | c/o Selene Finance LP |
| 9990 Richmond Ave., Suite 400 South | 9990 Richmond Ave., Suite 400 South |
| Houston, TX 77042 | Houston, TX 77042 |
| (877) 735-3637 | (877) 735-3637 |

| INDEXING INSTRUCTIONS |
|---|
| Lot 22, Parkwood S/D, Plat Book 12 at Page 28, Hinds Co., First District, MS. |



BOOK 7170 PAGE 4925

1476424          BOOK 7197 PAGE 9493

## ASSIGNMENT OF DEED OF TRUST

*FOR VALUE RECEIVED*, **RESIDENTIAL MORTGAGE TRUST 2008-R1, ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, does hereby assign and transfer to **DLJ MORTGAGE CAPITAL, INC.** whose address is c/o SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 SOUTH, HOUSTON, TX 77042, all its right, title and interest in and to the described Deed of Trust, together with the note dated 9/27/2001 secured by said mortgage, executed by **AVERY CAHEE AND JANET CAHEE** to **CIMARRON MORTGAGE COMPANY DBA THE MORTGAGE WAREHOUSE** for $90,950.00, dated 9/27/2001 of record on 10/2/2001 in Book 5450 Page 593 as Document 716665, in the HINDS 1ST DISTRICT County Clerk's Office, State of MISSISSIPPI.

Property Address: 1044 PARWOOD PLACE, JACKSON, MISSISSIPPI 39206
Legal description: LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HINDS COUNTY AT JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 26, REFERENCE TO WHICH IS HEREBY MADE.

Executed this ___11-6-2014___

**RESIDENTIAL MORTGAGE TRUST 2008-R1, BY AND THROUGH ITS ATTORNEY IN FACT, SELENE FINANCE LP**

By: _____
        Donna Brammer
Title: _____Vice President_____

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

Assignor phone number is 1-888-679-6377
Assignee phone number is 1-888-679-6377

BOOK 7170 PAGE 4926

BOOK 7197 PAGE 9494

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned officer, on this day, personally appeared ___Donna Brammer___ the ___Vice President___ of SELENE FINANCE LP, ATTORNEY IN FACT FOR RESIDENTIAL MORTGAGE TRUST 2008-R1, ITS SUCCESSORS AND ASSIGNS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this __11·20·14__ .

_____
Notary Public in and for the State of TEXAS
Notary's Printed Name: N. GUTWILLIG
My Commission Expires: 11/12/2014

N. GUTWILLIG
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
11-12-2014

For $90,950.00 dated 9/27/2001

STATE OF MS
COUNTY OF HINDS
FILED·RECORDED
1ST DISTRICT

2014 NOV 10  PM 3: 03

BOOK
PAGE
EDDIE JEAN CARR
CHANCERY CLERK

**RECORD THIRD**

BOOK **7197** PAGE **5508**

155 99 7 6
**1559976**

| ASSIGNMENT OF DEED OF TRUST |
|---|

| PREPARED BY: | WHEN RECORDED RETURN TO: |
|---|---|
| Caliber Home Loans, Inc. | Dean Morris, LLC |
| 13801 Wireless Way | 2309 Oliver Rd |
| Oklahoma City, OK 73134 | Monroe, LA 71201 |
| (405) 608-2535 | (318) 330-9020 |
| Sateesh K Vasamsetti | |
| **GRANTOR:** | **GRANTEE:** |
| DLJ Mortgage Capital, Inc. | U.S. Bank, N.A. as trustee for LSF9 Master |
| 11 Madison Avenue 4th Floor | Participation Trust |
| New York, NY 10010-0000 | c/o Caliber Home Loans, Inc. |
| (212) 235-2000 | 13801 Wireless Way |
| | Oklahoma City, OK 73134 |
| | (405) 608-2535 |

| INDEXING INSTRUCTIONS |
|---|
| Lot 22, Parkwood S/D, Plat Book 12 at Page 28, Hinds Co., First District, MS. |

BOOK **7197** PAGE **5509**

_____ Space above for Recorder's use _____

Recording Requested By:

Prepared By: Caliber Home Loans, Inc., 13801 Wireless Way, ,
Oklahoma City, OK 73134, (405) 608-2535, SATEESH K
VASAMSETTI

And When Recorded Mail To:
Caliber Home Loans, INc.
13801 Wireless Way
Oklahoma City, OK 73134
(405) 608-2535

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, DLJ MORTGAGE CAPITAL INC.,, 11 MADISON AVENUE 4TH FLOOR, NEW
YORK,, NY 10010-0000, hereby assign and transfer to U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER
PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134-0000, all its right, title and
interest in and to said Deed of Trust in the amount of $90,950.00, recorded in the State of MISSISSIPPI, County of HINDS
(1st DISTRICT) Official Records, dated SEPTEMBER 27, 2001 and recorded on OCTOBER 02, 2001, as Instrument
No. 716665, in Book No. 5450, Page at Page No. 593 .
Executed by: AVERY CAHEE AND JANET CAHEE (Original Trustor).
Original Beneficiary: CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE.  Legal
Description: See Attached Exhibit.

Date: SEPTEMBER 28, 2016
DLJ MORTGAGE CAPITAL INC., BY CALIBER HOME LOANS INC. AS ATTORNEY IN FACT

By: _____
     Roy Lacey, Authorized Signer

State of     **OKLAHOMA**                               }
County of   **OKLAHOMA**                             } ss.

On SEPTEMBER 28, 2016 , before me, Nancy Ortiz, a Notary Public, personally appeared Roy Lacey, who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____
(Notary Name): Nancy Ortiz
My commission expires: 09/29/2020

Legal Description

BOOK **7197** PAGE **5510**

LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT THEREOF WHICH
IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HINDS COUNTY AT
JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 28, REFERENCE TO WHICH IS HEREBY MADE.

Indexing Inst   Lot 22 Parkwood Subd.

BOOK: 7254 PAGE: 8802

Recording Requested By: Mission Global, LLC - GS Loanstar June 2020 RPL

Prepared By: Sean Hunt, Mission Global, LLC 5701 E. Hillsborough Ave, Suite 1231 Tampa, FL, 33610
813-583-6777
When Recorded Return To: Sean Hunt, Mission Global, LLC, 5701 E. Hillsborough Ave, Suite 1231, Tampa, FL
33610

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Hinds (1st District), Mississippi
Mission Global LLC - GS LoneStar June 2020 RPL                    "CAHEE"

Date of Assignment: November 23rd, 2020
Assignor: U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY ITS
ATTORNEY IN FACT MISSION GLOBAL, LLC at 1525 S BELTLINE RD, COPPELL, TX  75019 Phone:
(800) 401-6587
Assignee: GOLDMAN SACHS MORTGAGE COMPANY at Address: 2001 ROSS AVENUE, SUITE 2800,
DALLAS, TX  75201 Phone: () -
Original Beneficiary: CIMARRON MORTGAGE COMPANY DBA/ THE MORTGAGE WAREHOUSE
Address: P.O. BOX 12830, JACKSON, MS 39236  Phone: 000-000-0000

Executed By: AVERY CAHEE AND JANET CAHEE at 1044 PARKWOOD PLACE JACKSON, MS 39206
Phone:  To: CIMARRON MORTGAGE COMPANY DBA/ THE MORTGAGE WAREHOUSE  Address: P.O.
BOX 12830, JACKSON, MS 39236  Phone: 000-000-0000
Dated: 09-27-2001 Recorded: 10-02-2001 as Instrument No. 716665, Book/Reel/Liber 5450 Page/Folio
593  In the County of Hinds (1st District), State of Mississippi.

Property Address: 1044 PARKWOOD PLACE, JACKSON, MS  39206

Legal: LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT
THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF
HINDS COUNTY, JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 28, REFERENCE TO WHICH
HEREBY IS MADE.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Deed of Trust having an original principal sum of $90,950.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever,
subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has
executed these presents the day and year first above written:

U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY ITS ATTORNEY
IN FACT MISSION GLOBAL, LLC
On November 23rd, 2020

By: 
Shannon Grenier, Assistant Secretary

BOOK: 7254 PAGE: 8803

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Florida
COUNTY OF Hillsborough

On November 23rd, 2020, before me, Alyssa Uptegraff, a Notary Public in and for Hillsborough in the
State of Florida, personally appeared Shannon Grenier, Assistant Secretary of MISSION GLOBAL, LLC
AS ATTORNEY IN FACT FOR U.S BANK TRUST N.A. AS TRUSTEE FOR LSF9 MASTER
PARTICIPATION TRUST, personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

The foregoing instrument was acknowledged before me by means of _X_ physical presence or ___ online
notarization

WITNESS my hand and official seal,

Alyssa Uptegraff
Notary Expires: 3/12/2024

ALYSSA UPTEGRAFF
Commission #
Expires March 12, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

STATE OF MS
COUNTY OF HINDS
FILED-RECORDED
1ST DISTRICT
2021 Jan 04 PM 03:03
Book 7254 Page: 8802
EDDIE JEAN CARR
CHANCERY CLERK

BOOK: 7297 PAGE: 687

E-Recorded

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **GOLDMAN SACHS MORTGAGE COMPANY**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201, PHONE#: 212-902-1000**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201, PHONE#: 212-902-1000**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **9/27/2001**
Original Loan Amount: **$90,950.00**
Executed by (Borrower(s)): **AVERY CAHEE & JANET CAHEE**
Original Trustee: **JOHN H. SHOWS, ATTORNEY-AT-LAW**
Original Beneficiary: **CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE**
Filed of Record: In Book **5450**, Page **593**
Document/Instrument No: **716665** in the Recording District of **Hinds (1st District Jackson)**, MS, Recorded on **10/2/2001**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1044 PARKWOOD PLACE, JACKSON, MS 39206**

BOOK: 7297 PAGE: 688

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **5/23/2023**

**GOLDMAN SACHS MORTGAGE COMPANY, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **LISA V. HARRIS**                                    Witness Name: **JUSTIN CALITRO**
Title: **VICE PRESIDENT**

POA was recorded in Allen IN on
3/20/2023Inst#2023011413

| |
|---|
| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |

State of          **FLORIDA**
County of       **PINELLAS**

On **5/23/2023**, before me, **TRINH PHAM**, a Notary Public, personally appeared **LISA V. HARRIS, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR GOLDMAN SACHS MORTGAGE COMPANY**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that LISA V. HARRIS, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **TRINH PHAM**
My commission expires: **08/08/2026**

TRINH PHAM
Notary Public
State of Florida
Comm
Expires 8/8/2026

**EXHIBIT "A"**

LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HINDS COUNTY AT JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 28, REFERENCE TO WHICH IS HEREBY MADE.

STATE OF MS
COUNTY OF HINDS
FILED-RECORDED
1ST DISTRICT
2023 Jun 26 PM 03:03
Book: 7297 Page: 687
EDDIE JEAN CARR
CHANCERY CLERK

BOOK: 7300 PAGE: 8424

E-Recorded

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201, PHONE#: 212-902-1000**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019, PHONE#: N/A**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 9/27/2001
Original Loan Amount: $90,950.00
Executed by (Borrower(s)): **AVERY CAHEE & JANET CAHEE**
Original Trustee: **JOHN H. SHOWS, ATTORNEY-AT-LAW**
Original Beneficiary: **CIMARRON MORTGAGE COMPANY DBA/THE MORTGAGE WAREHOUSE**
Filed of Record: In Book 5450, Page **593**
Document/Instrument No: **716665** in the Recording District of **Hinds (1st District Jackson), MS**, Recorded on **10/2/2001**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1044 PARKWOOD PLACE, JACKSON, MS 39206**

BOOK: 7300 PAGE: 8425

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **10/23/2023**

**MTGLQ INVESTORS, L.P., BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MARIO REYES**                                       Witness Name: **JANICE ALANIS**
Title: **VICE PRESIDENT**

POA was recorded in ADAMS IN on 05/03/2023
Inst#2023001371

| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |
| --- |

State of          **FLORIDA**
County of        **PINELLAS**

On **10/23/2023**, before me, **DICHE' BATTLE**, a Notary Public, personally appeared **MARIO REYES, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MARIO REYES, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **DICHE' BATTLE**
My commission expires: **02/13/2027**

DiChe' Battle
Notary Public
State of Florida
Comm#
Expires 2/13/2027

BOOK: 7300 PAGE: 8426

## EXHIBIT "A"

LOT 22, PARKWOOD SUBDIVISION, A SUBDIVISION ACCORDING TO THE MAP OR PLAT THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF HINDS COUNTY AT JACKSON, MISSISSIPPI IN PLAT BOOK 12 AT PAGE 28, REFERENCE TO WHICH IS HEREBY MADE.

STATE OF MS
COUNTY OF HINDS
FILED-RECORDED
1ST DISTRICT
2023 Nov 29 PM 03:03
Book: 7300 Page: 8424
EDDIE JEAN CARR
CHANCERY CLERK